## 2021UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **GOTHAM CITY ORTHOPEDICS, LLC,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**AETNA INC.,** *et al.*<br><br>    **Defendants.** | Civ. No. 20-19634 (KM)(JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Gotham City Orthopedics, LLC ("Gotham") initiated this action against Aetna Inc., Aetna Health Inc., Aetna Life Insurance Company, Aetna Insurance Company of Connecticut, and Non-New Jersey Aetna Plans 1-10[1] (collectively "Aetna" or "Defendants") for their alleged repeated failure to make payments upon claims for emergency services rendered to participants in Aetna insured or administered health plans. Gotham asserted claims for breach of implied contract, breach of the covenant of good faith and fair dealing, promissory estoppel, quantum meruit, and violations of certain New Jersey regulations governing payment for emergency services rendered by an out-of-network provider.

The Aetna Defendants moved to dismiss the initial Complaint. Gotham responded with a motion for leave to file a First Amended Complaint, which is now before the Court. For the reasons provided herein, I will deny Gotham's motion to amend. For the reasons stated herein, that order is entered without prejudice to a further motion to amend.

---

[1]    Gotham also named fictitious defendants John Does 1-10. The parties subsequently stipulated dismissal of the action without prejudice against defendant Aetna Insurance Company of Connecticut. (DE 27.)

I.    **Summary**[2]

a. **Factual Allegations**

Gotham is a medical practice located in Clifton, New Jersey. (Compl. ¶7.) The practice consists of a group of orthopedic surgeons who have visiting rights in numerous New Jersey hospitals. (*Id.* ¶13.) Defendant Aetna, a Pennsylvania corporation with offices in New Jersey, offers, underwrites, or administers health plans through its subsidiaries or affiliates. (*Id.* ¶¶8-9.) The individual insureds in this action are employees or relatives of employees covered under their employers' health insurance plans which are sponsored, funded, and/or administered by Aetna. (*Id.* ¶11.) Gotham alleges that each plan "provided

---

[2]    Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Compl." = Complaint and Jury Demand (DE 1-1)

"1AC" = Gotham's Proposed First Amended Complaint (Exhibit A to the Certification of Shannon Carroll in Support of Motion for Leave to File a First Amended Complaint (DE 13-2))

"Br." = Brief in Support of Plaintiff's Motion to Amend the Complaint (DE 13-1)

"Carroll Cert." = Certification of Shannon Carroll in Support of Motion for Leave to File a First Amended Complaint (DE 13-2)

"Opp." = Aetna Defendants' Response in Opposition to Plaintiff's Motion For Leave to Amend the Complaint (DE 17)

"Reply" = Reply Brief in Further Support of Plaintiff's Motion to Amend the Complaint (DE 21)

"Sur-reply" = Aetna Defendants' Sur-Reply in Further Opposition to Plaintiff's Motion for Leave to Amend the Complaint (DE 25)

"MTD Br." = Aetna Defendants' Memorandum in Support of their Motion to Dismiss Plaintiff's Complaint (DE 5-2)

health, medical and hospital coverage, including emergency room coverage, expressly and/or by operation of law." (*Id.*)

As alleged in the Complaint, Gotham provided emergency, medically necessary surgical and medical services to twenty-nine patients who were covered under an Aetna health plan. (*Id.* ¶¶14-321.) Each patient (1) presented to the emergency room following an injury; (2) received "continuous, emergent medically necessary care" from Gotham; and (3) "had no choice in selecting their medical provider." (*Id.*) Gotham submitted a claim to Aetna for each of the services provided, and Aetna either underpaid or failed to pay each claim. (*Id.*) Gotham filed unsuccessful appeals for each claim. (*Id.*) Gotham alleges that, in total, Aetna owes $1,332,703.07 in underpaid claims. (*Id.* ¶4; *see also* Exhibit A to the Compl.)

### b. Procedural History

Gotham initiated this action by filing its Complaint in the Superior Court of New Jersey, Law Division, Passaic County, No. PAS-L-003391-20, on November 6, 2020. (Compl.) The Complaint asserted the following state-law causes of action:

**Count I** – Breach of Implied Contract;

**Count II** – Breach of Covenant of Good Faith and Fair Dealing;

**Count III** – Promissory Estoppel;

**Count IV** – Quantum Meruit;

**Count V** – Violations of New Jersey Regulations Governing Payment for Emergency Services Rendered by an Out-of-Network Provider (N.J.A.C 11:22-5.8; 11:24-5.1; and 11:24-9.1(d)

(*Id.* ¶¶336-34.) As stated in the Complaint, Gotham "asserted direct claims and causes of action that are not predicated on an assignment of benefits from the patient." (*Id.* ¶333.)

Defendants removed the action to this Court on December 17, 2020, pursuant to 28 U.S.C. §§ 1332, 1441(a) and (b) and 1446. (DE 1.) Defendants then filed a motion to dismiss (DE 5) the Complaint on February 26, 2021,

asserting that (1) Gotham's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and (2) the Complaint fails to state a claim under New Jersey law. (MTD Br. at 7-8.)

After briefing on Defendant's motion to dismiss was complete, Plaintiff filed the pending motion for leave to amend the Complaint. (DE 13.) On August 3, 2021, the Court administratively terminated Defendants' motion to dismiss, which would potentially be mooted by the motion for leave to amend. (DE 22). Gotham seeks amend its complaint to add alternative claims predicated on certain insureds' assignment of benefits and execution of power of attorney forms.

## II.    Discussion

### a.  Legal Standard

A party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under 12(b), (c), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a); *see also  Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "[L]eave [to amend] shall be freely given when justice so requires." *Id.* Accordingly, the courts "have shown a strong liberality ... in allowing amendments under Rule 15(a)." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 425 (3d Cir.1981) (quoting 3 J. Moore, Moore's Federal Practice ¶ 15.08(2) (2d ed. 1989)).

In determining a motion for leave to amend, Courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *Foman v. Davis*, 371 U.S.

178 (1962); *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010).

"Futility" means that the complaint, as amended, "would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983); *see also Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001); *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). Otherwise, "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (internal quotation and citation omitted). Thus "delay," for example, entails more than the mere passage of time; to warrant denial of leave to amend, it must be "undue" or prejudicial. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). The Court should deny leave only when the *Foman* factors "suggest that amendment would be 'unjust'. . . ." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

### b. Gotham's Motion to Amend

Aetna moved to dismiss the initial Complaint on the ground that, *inter alia*, Gotham's claims are preempted by ERISA. Gotham submits that, in the wake of that motion to dismiss, it reviewed its patient files and determined that certain insureds contractually assigned their insurance benefits to Gotham. Those assignments allegedly included the right to submit insurance claims, receive reimbursements, and pursue administrative and judicial appeals. (IAC ¶¶343-351.) Additionally, certain insureds appointed Gotham to serve as their agent pursuant to an executed power of attorney ("POA"). (*Id.*¶¶351-354.) Thus, in addition to the claims for underpayment of emergency services asserted in the initial Complaint, Gotham seeks to amend its pleadings to include claims for ERISA violations on behalf of those insureds who either assigned to Gotham their legal rights and benefits under their respective plans or who executed a POA authorizing Gotham to pursue claims on their behalf. (Br. at 8.)

The Proposed First Amended Complaint contains the same claims for counts one through five as in the initial Complaint with the following caveats noted in italics:

**Count 1** – Breach of Implied Contract *for Emergency Services Provided*;

**Count 2** – Breach of Covenant of Good Faith and Fair Dealing *for Emergency Services Provided*;

**Count 3** – Promissory Estoppel *for Emergency Services Provided*;

**Count 4** – Quantum Meruit *for Emergency Services Provided*;

**Count 5** – Violations of New Jersey Regulations Governing Payment for Emergency Services Rendered by an Out-of-Network Provider

(1AC ¶¶397-426.)

Additionally, the proposed pleading asserts the following new counts:

**Count 6** – Violations of the Affordable Care Act Governing Payment for Emergency Services Rendered by an Out-of-Network Provider;

**Count 7** – Claim for Benefits Due Under ERISA § 502(a)(1)(B);

**Count 8** – Violation of Fiduciary Duties of Loyalty and Care;

**Count 9** – Penalties for Failure to Provide Plan Documents;

**Count 10** – Attorneys' Fees and Costs Under ERISA;

**Count 11** – Breach of Contract;

**Count 12** – Breach of the Covenant of Good Faith and Fair Dealing;

**Count 13** – Promissory Estoppel;

**Count 14** – Unjust Enrichment;

**Count 15** – Quantum Meruit

(*Id.* ¶¶427-519.)

### c. State law claims for emergency services (Counts 1 through 5) and parallel representative-capacity claims (Counts 11–15)

I first address Gotham's state law claims for emergency services, as pleaded in both the initial Complaint and the proposed First Amended Complaint, because they are preempted by ERISA. As to these, the Court

essentially is adjudicating the grounds asserted in the prior, terminated motion to dismiss.

ERISA "provide[s] a uniform regulatory regime over employee benefit plans," including health insurance plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To that end, ERISA contains "a broad express preemption provision, which 'supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Plastic Surgery Ctr.*, 967 F.3d at 226 (quoting 29 U.S.C. § 1144(a)).

In deciding whether a state law "relates to" a benefit plan, courts assess the extent to which the law "has a connection with or reference to such a plan." *Gotham City Orthopedics, LLC v. Aetna Inc.*, No. 20-14915, 2021 WL 1541069, at *2 (D.N.J. Apr. 19, 2021) (citing *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474, 479 (2020)).

> Recognizing that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course," the Supreme Court has sought to craft a functional test for express preemption, instructing that a state law "relates to" an employee benefit plan if it has either (1) a "reference to" or (2) a "connection with" that plan, The first applies "[w]here a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation." The second covers state laws that "govern[ ] . . . a central matter of plan administration or interfere[ ] with nationally uniform plan administration," and those state laws that have "acute, albeit indirect, economic effects [that] force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." The latter inquiry is guided by "the objectives of the ERISA statute," which provide a blueprint for "the scope of the state law that Congress understood would survive."

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 226–27 (3d Cir. 2020) (citations omitted). In enacting ERISA, Congress sought, *inter alia,* "to ensure that plans were not crippled by the administrative cost of complying

with not only ERISA, but also innumerable, potentially conflicting state laws." *Id.* at 226.

With that in mind, the Third Circuit has held that a state law "relates to" an ERISA plan where "the existence of an ERISA plan [i]s a critical factor in establishing liability" and "the trial court's inquiry would be directed to the plan." *See 1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992). State laws that may "relate to" and ERISA plan include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). "This includes not only state statutes, but also common law causes of action." *Plastic Surgery Ctr.*, 967 F.3d at 266.

Here, Gotham seeks to bring claims under state common law (breach of implied contract, breach of covenant of good faith and fair dealing, promissory estoppel, and quantum meruit) and statutory law (violation of New Jersey regulations governing payment for emergency services). Those claims rest on the theory that Defendants had a duty, under New Jersey law, to cover emergency services, independent of their obligations under the ERISA health plans. (Reply at 11; 1AC ¶¶397-426.) Plaintiff's theory, however, was recently rejected by another Court in this district. In *Gotham City Orthopedics, LLC v. Aetna Inc.*, Gotham asserted claims nearly identical to those before this court, and Judge Wigenton concluded that Gotham's common law and statutory claims were preempted by ERISA because they "relate to" the insured's ERISA plans. No. 20-14915, 2021 WL 1541069, at *2 (D.N.J. April 19, 2021).

I first address the contract, covenant of good faith and fair dealing, and promissory estoppel claims (Counts 1, 2, and 3). First, I note, as did Judge Wigenton, that courts have routinely held "that when a party challenges the denial of ERISA benefits, but restyles those claims as common-law causes of action based on breach of contract, the implied covenant of good faith and fair dealing, promissory estoppel, or quantum meruit, those claims are preempted." *Id.* at *2 (citing *Sleep Tight Diagnostic Ctr., LLC v. Aetna Inc.*, 399 F. Supp. 3d

241, 250 (D.N.J. 2019); *Urbanik v. ITT Corp.*, Civ. No. 09-00627, 2009 WL 2132434, at *4 (D.N.J. July 13, 2009); *Schmelzle v. Unum Life Ins. Co. of Am.*, Civ. No. 08-0734, 2008 WL 2966688, at *3 (D.N.J. July 31, 2008)). Second, these claims are "generally premised on Defendants' alleged wrongful denial of the Patients' benefits *under their Aetna ERISA plans*" and "repeatedly acknowledges that the Patients were insured under ERISA plans and demands payment according to those plan benefits." *Id.* (emphasis added); (*see also*, *e.g.*, 1AC ¶400 ("Plaintiff rendered emergent, medically necessary surgical and medical services to the Aetna's insureds which are indisputably covered under Aetna's healthcare plan and in doing so, Plaintiff reasonably expected Aetna to properly compensate Plaintiff.8."); ¶415 (At all relevant times, Aetna refused to pay Plaintiff correctly for the surgical and medical services Plaintiff provided to Aetna's insureds. [*sic*] who were covered under a plan sponsored, funded, insured and/or administered by Aetna, contrary to the insurance provided by the plan to the member and contrary to the common law, statutory and regulatory obligations of Aetna.").)

    Further, as in the case before Judge Wigenton, Gotham does not here point to "any separate contractual relationship between Plaintiff and Defendants or assert that Defendants proffered any specific representations to Plaintiff (beyond the mere existence of the ERISA plans themselves)." *See Gotham City*, 2021 WL 1541069 at *3. (*See also* 1AC ¶¶ 397-426.) Unlike in-network providers, whose relationship with the insurer is governed by a provider agreement, "out of network providers do not have pre-existing contractual relationships with the insurer." *Plastic Surgery Ctr.*, 967 F.3d at 231. Thus, absent some agreement between the insurer and out-of-network provider, the provision of services from a provider to an insured does not create a contractual relationship between the provider and the insurer that is independent of the plan. *See id.* Here, Gotham has not alleged that Defendants made any representations or entered into any independent agreement separate from the insured's health plans.

Compare, for example, *Plastic Surgery Ctr.*, *supra,* in which an out-of-network provider brought breach of contract, promissory estoppel, and unjust enrichment claims against an insurer who agreed to cover certain services that were not covered under the insureds' health plans. 967 F.3d at 223. The Third Circuit permitted the breach of contract and promissory estoppel claims because, *inter alia*, the insurer expressly agreed to cover the services. *Id.* at 231-32. Therefore, those claims sought to enforce contractual or quasi-contractual obligations that arose *independent* of the health plan (*i.e.*, that arose from the insurer's promise to pay for the uncovered services). *Id.* The Court also held that the contract and promissory estoppel claims did not have a "connection with" an ERISA plan because the provider did not allege that the plan covered the services in question; instead, the provider alleged that the insurer "must pay the cost of the[] services only because, and to the extent, it promised the Center that it would." *Id.* at 237. This case is distinguishable on both of the key grounds cited by *Plastic Surgery*. Here, Gotham does not allege that the Aetna Defendants agreed to provide coverage for the out-of-network services. Moreover, Gotham repeatedly alleges that the insured's health plans covered those services. (See, *e.g.*, 1AC ¶¶400, 411, 415.)

Gotham's claims, then, cannot be divorced from the alleged coverage of its services under the Aetna plans in question. (1AC ¶398 ("Aetna knew as a matter of law that their members and beneficiaries *are entitled to be covered* for out-of-network emergency care."), ¶ 411 ("Through their course of dealings, and under New Jersey law, Plaintiff expected Aetna to process claims and issue benefits *in accordance with the terms of the Aetna Plans* through which the Aetna insureds received benefits."), ¶514 ("At all relevant times, Aetna refused to pay Plaintiff correctly for the surgical and medical services Plaintiff provided to Aetna's insureds. [*sic*] who were covered under a plan sponsored, funded, insured and/or administered by Aetna, *contrary to the insurance provided by the plan* to the member and contrary to the common law, statutory and regulatory obligations of Aetna.") (emphasis added).) Thus, unlike the claims in

*Plastic Surgery Ctr*, here, there is no basis independent of the ERISA governed plans for the provision of coverage. Therefore, because, "the existence of an ERISA plan [i]s a critical factor in establishing liability" and "the trial court's inquiry would be directed to the plan," Gotham's common law claims "relate to" an ERISA plan and are preempted.  *See 1975 Salaried Ret. Plan*, 968 F.2d at 406.

Gotham's quantum meruit claim (Count 4) is likewise preempted. As asserted on behalf of Gotham in its own right, it is legally flawed for another reason. Quantum meruit "is applied when, absent a manifest intention to be bound, one party has conferred a benefit on another and the circumstances are such that to deny recovery would be unjust." *China Falcon Flying Ltd. v. Dassault Falcon Jet Corp.*, 329 F. Supp. 3d 56, 76 (D.N.J. 2018) (citing *Kas Oriental Rugs, Inc. v. Ellman*, 394 N.J. Super. 278, 286 (App. Div. 2007)). Numerous courts, however, have held that "the insured individual, rather than the insurer, derives the benefit from a healthcare providers' provision of medical services." *Haghighi v. Horizon Blue Cross Blue Shield of New Jersey*, No. 19-20483, 2020 WL 5105234, at *5 (D.N.J. Aug. 31, 2020); *Small v. Oxford Health Ins., Inc.*, No. 18-13120, 2019 WL 851355, at *6 (D.N.J. Feb. 21, 2019) ("[A]n insurance company does not derive a benefit from services provided for an insured for purposes of a quantum meruit claim."); *Gotham City*, 2021 WL 1541069 at *3. It therefore is not a claim that Gotham can pursue independently.

Count 5, Gotham's statutory claim for reimbursement of emergency services, is also preempted by ERISA. The proposed First Amended Complaint submits that N.J.S.A. 26:2H-18 requires providers to "render emergent care to all patients, regardless of their ability to pay, or the source of the payment." (1AC ¶420.) Further, the First Amended Complaint contends that, to ensure access to emergency care, New Jersey insurance regulations (1) "mandate that payors determine coverage and pay promptly"; (2) require "payors to specifically notify their subscribers that they are entitled to have 'access' to emergency

services, and 'payment of appropriate (health) benefits' for emergency conditions"; and (3) require that out-of-network providers be "paid a large enough amount to ensure that the patient is not balance billed." (*Id.* ¶¶420-422 (citing N.J.A.C. 11:24A-2.5(b)(2).) Additionally, Gotham alleges that "the payor must pay the provider its actual billed charges minus the copayments, coinsurance and deductible that would have applied had the patient sought treatment from an in-network provider." (*Id.* ¶422.)

Like Judge Wigenton, I find that those regulatory mandates are not wholly independent, but rather that they affect the scope of benefits provided *by an ERISA plan* (*i.e.* coverage for certain emergency services regardless of the providers' out-of-network status). *Gotham City*, 2021 WL 1541069 at *3. Moreover, Gotham's proffered interpretation of the New Jersey regulatory scheme requires insurers pay out-of-network providers for emergency services to the same extent they would have paid for in-network providers. To determine what the insurer owes the out-of-network provider, then, the court would have to determine what the insurer would owe an in-network provider pursuant to the terms of the ERISA plan. For this additional reason, Count 5 must be preempted because, to determine liability, this "court's inquiry would be directed to the plan." *See 1975 Salaried Ret. Plan*, 968 F.2d at 406.

Because Gotham's statutory, contract, covenant of good faith and fair dealing, promissory estoppel, and quantum meruit claims are preempted, any amendment would be futile. I therefore deny Gotham's motion to amend as to Counts 1, 2, 3, 4, and 5.[3]

---

[3]    The First Amended Complaint adds state law claims, closely parallel to those in the original complaint, but asserted by Gotham in a representative capacity, by virtue of POAs or assignments from insureds. These are likewise preempted.

Counts 11, 12, 13, and 15 of the proposed First Amended Complaint are parallel to the common law claims (breach of contract, breach of covenant of good faith and fair dealing, promissory estoppel, and quantum meruit) asserted in Counts 1, 2, 3, and 4. (1AC ¶¶481-510.) The conduct being challenged is essentially the same: namely, Defendants' alleged failure to provide coverage *in accordance with the ERISA health plans.* (*Compare* IAC ¶¶397-413, 419-426, *with* ¶¶481-510.) Counts 11, 12, 13, and 15, are preempted for the reasons given in connection with Counts 1, 2, 3, and 4.

### d. Newly asserted ERISA claims premised on assignment of benefits and executed POAs

#### i. Undue Delay and Prejudice to Defendants

As explained, Gotham asserted its initial claims as direct causes of action on its own behalf. Following briefing of Defendants' motion to dismiss, and following Judge Wigenton's unfavorable decision in *Gotham City*, Gotham allegedly reviewed its patient files and determined that several insureds had executed POAs or assignments of their benefits to Gotham. (Carroll Cert. ¶4.) Gotham filed the current motion to amend the complaint to include alternative ERISA claims asserted by Gotham in a representative capacity on behalf of its insureds. (Br. at 5.)

Defendants respond that Gotham's motion to amend should be denied on threshold grounds because seeks to add the representative-capacity claims in bad faith and for dilatory purposes. (Opp. at 8.) Defendants submit that Gotham has been aware of the alleged assignments and POAs for years but made a strategic decision to pursue direct claims in order to circumvent ERISA and remain in state court. (*Id.* at 8.) Defendants further submit that Gotham's delay in seeking amendment is undue because (1) it was motivated by tactical considerations and (2) the allegations could have been pleaded much earlier. (*Id.* at 17.)[4]

---

In Count 14, Gotham asserts a common law claim for unjust enrichment which does not have a counterpart in the original complaint. (*Id.* ¶¶511-515.) It fares no better than the other common law claims, however, because it is likewise predicated on Defendants' alleged obligations under the plans. (*See* 1AC ¶514 ("By and through its failure to process claims and issue benefits for services rendered by Plaintiff *in accordance with the Aetna Plans* through which certain Aetna Insureds received benefits, Aetna has retained moneys to which it is not entitled and to which Plaintiff is entitled for services rendered to the Aetna Insureds.") Because this Court's "inquiry would be directed to the plan," the unjust enrichment claim "relates to" an ERISA plan and is preempted. *See 1975 Salaried Ret. Plan*, 968 F.2d at 406.

[4]    Defendants also assert that Gotham is bound by the original complaint, which did not allege that such assignments or POAs exist. *See infra*.

13

"Delay" entails more than the mere passage of time and must be prejudicial to the non-amending party to warrant denial of leave to amend. *Cureton*, 252 F.3d at 273. Defendants here submit that the delay is prejudicial because Gotham's alternative theory could have been pleaded much earlier. (Opp. at 17.) Defendants rely on *Cureton*, where the Third Circuit affirmed the district court's denial of the plaintiff's post-judgment motion to amend because, *inter alia*, "the factual information on which the proposed amendment relied was known almost two-and-a-half years before plaintiffs sought leave to amend." 252 F.3d at 273-74. In that case, however, the motion to amend was also filed three years after the initial complaint was filed, and the court found that "the finality of the proceedings would be compromised by amendment." *Id.* Here, even assuming that Gotham was aware, as Defendants contend, of the assignments of benefits and POA for years before filing this action, the initial complaint was filed in state court in November 2020 (DE 1-1), less than a year ago. Further, this matter is still only at the pleading stage, and at least some of the interim has been consumed by Defendants' removal of the case and its aftermath. We have not gone down a procedural road that requires the court to retrace its steps or undo prior rulings. Nor is there any indication of lost evidence or other forms of prejudice. Therefore, I find that any delay here does not prejudice the defense. Indeed, in such cases, courts "within the Third Circuit typically dismiss the preempted state law claims and grant leave to amend the complaint to plead ERISA claims, so as to provide defendants with proper notice of the nature of these claims." *Chang v. Prudential Ins. Co. of Am.*, No. 16-CV-3351, 2017 WL 402980, at *3 (D.N.J. Jan. 30, 2017) (citing *Estate of Jennings v. Delta Air Lines, Inc.*, 126 F. Supp. 3d at 471 (collecting cases; rejecting Plaintiff's request to convert preempted state law claims into ERISA claims and granting leave to amend the complaint)).

Because I conclude amendment is not sought in bad faith, would not prejudice the defense, and would not cause undue delay, I will not deny leave to amend on that basis. However, as explained below, the proposed First

Amended Complaint would not survive a motion to dismiss, and therefore I find amendment would be futile.

### ii. **Futility**

First, Defendants submit that Gotham lacks standing or is estopped to bring these representative-capacity ERISA claims because the original Complaint disavowed assignee status. (Br. at 20; Opp. at 15.) In Defendants' telling the factual allegations in the proposed First Amended Complaint contradict statements made in the original Complaint. However, the original Complaint did not allege that assignments of benefits did *not* exist. (*See generally* Compl.) Rather, Gotham stated that its direct claims were not predicated on an assignment of benefits. (Compl. ¶333.) The plaintiff, of course, is master of its complaint, and may assert or withhold whatever claims it wishes. That the proposed First Amended Complaint seeks to add alternative claims based on an assignment is not a factual contradiction but rather an alternative legal theory. To the extent, *arguendo,* that there is a contradiction, it is not one that has prejudiced the defense.

However, there are other flaws with the ERISA-based claims in the proposed First Amended Complaint.

1. Count 7's claim for benefits due under ERISA § 502(a)(1)(B)

Section 502(a) of ERISA empowers "a participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan." ERISA § 502(a), 29 U.S.C. 1132(a); *see Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 (3d Cir. 2004). A "participant" is defined in the statute:

> [A "participant" is] any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

ERISA § 3(7), 29 U.S.C. § 1002(7). A "beneficiary" is statutorily defined as "a person designated by a participant, or by the terms of an employee benefit

plan, who is or may become entitled to a benefit thereunder." ERISA § 3(8), 29 U.S.C. § 1002(8). Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary. *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014).

To recover under section 502(a)(1)(B), a plaintiff must demonstrate an entitlement to benefits. *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006). Thus, the District of New Jersey has dismissed ERISA claims where plaintiffs failed to cite to specific plan provisions. "It is the Plaintiff's burden of proof to have the plan documents and cite to specific plan provisions when filing a civil complaint to obtain ERISA benefits." *Ruiz v. Campbell Soup Co.*, No. 12–cv–6131, 2013 WL 1737242, at *3 (D.N.J. Apr. 22, 2013) (citing *Broad St. Surgical Center, LLC v. UnitedHealth Grp., Inc.*, No. 11–cv–2775, 2012, WL 762498, at *15 (D.N.J. Mar. 6, 2012)).

> A plaintiff seeking to recover under section 502(a)(1)(B) must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan" and that the plan administrator improperly denied him or her those benefits. "ERISA's framework ensures that employee benefit plans be governed by written documents and summary plan descriptions, which are the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits."

*Broad St. Surgical Ctr*, 2012 WL 762498, at *13 (citations omitted); *see also Manning v. Sanofi–Aventis, U.S. Inc.*, No. 11–cv–1134, 2012 WL 3542284, at *3 (M.D. Pa. Aug. 14, 2012) ("To state a claim under § 502(a)(1)(B), plaintiff must allege that she was eligible for benefits under the Plan, that defendant wrongfully denied her benefits and that in doing so, defendant violated § 502(a)(1)(B).").

Here, Gotham asserts certain insureds' ERISA 501(a) claims based on assignments of benefits from those insureds. (1AC ¶435.) However, Gotham has not identified the plan provisions that were allegedly breached. (*See id.*

16

¶¶433-449.) Instead, the proposed First Amended Complaint alleges generally, without identifying a plan provision, that Aetna violated its legal obligations "each time it failed to make payment, made only partial payment, or delayed payment of benefits," without complying with ERISA requirements governing the claims process and adverse benefit determinations and without complying with the terms of the health plans. (*Id.* ¶¶442-43.) The claim is not necessarily flawed as a matter of law, but it is insufficiently pled.

To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plain language of ERISA section 502(a)(1)(B) requires a plaintiff to demonstrate his or her entitlement to "benefits due to him under the terms of his plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). To that end, the Third Circuit has explained that, "to assert an action to recover benefits under ERISA, a plaintiff must demonstrate that 'he or she [has] a right to benefits that is legally enforceable against the plan.' " *Saltzman v. Indep. Blue Cross*, 384 F. App'x 107, 111 (3d Cir. 2010) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)).

Gotham's claims lack the necessary allegations to set forth an ERISA claim. Gotham states in conclusory terms that it has been underpaid. While the proposed First Amended Complaint points to large disparity between the amount claimed by Gotham and the amount of Defendants' reimbursement, that disparity alone does not properly support a claim for relief. Gotham must point to the specific plan provisions that, in its view, plausibly entitle it to a greater sum of money. *See, e.g.*, *Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13–cv–552, 2015 WL 3938925, at *5 (D.N.J. June 25, 2015), *aff'd*, 650 F. App'x 106 (3d Cir. 2016) (dismissing plaintiff's ERISA section 502(a)(1)(B) claim for wrongful denial of pension and retirement benefits, where, *inter alia*, the plaintiff failed to identify "any provision of [the plan] suggesting he is entitled to pension or retirement contributions nor has he alleged any facts about the

plan."); *McDonough v. Horizon Blue Cross Blue Shield of N. Jersey, Inc.*, No. 09–cv–571, 2009 WL 3242136, at *3 (D.N.J. Oct. 7, 2009) (dismissing plaintiff's claim for underpayment of benefits under ERISA section 502(a)(1)(B), where the complaint "fail[ed], under Rule 8(a), to give notice of what [the defendant] did in contravention of the terms of the health plan and/or in violation of ERISA."); *Prof'l Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*, 697 F. App'x 39, 41 (2d Cir. 2017) (affirming the district court's dismissal of the plaintiff's ERISA section 502(a)(1)(B) claim where the complaint alleged that the defendant was "required to pay the 'usual, customary and reasonable rates' for services rendered by the out-of-network providers . . . but it fail[ed] to identify any provision in the plan documents requiring the [defendant] to pay such rates."). Therefore, I find that the ERISA 502(a)(1)(B) claim under Count VII is futile as currently pleaded.[5]

---

[5]    I note that Defendants also submit that Gotham seeks to assert claims that are time barred and that certain plans contained anti-assignment provisions. (Opp. at 23-24.) However, Defendants cite to only two plans that have contractual time limitations (*Id.* at 23 n.6.) and anti-assignment provision (*Id.* at 24 n.7.) Thus, other insureds may still have live claims.

Gotham's claims based upon its status as POA are vulnerable as a matter of law because "medical practices cannot act as attorneys-in-fact under the [New Jersey Revised Durable Power of Attorney Act, N.J.S.A. 46:2B-8.1 *et seq.*]." *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783, 2020 WL 1983693, at *8 (D.N.J. Apr. 27, 2020 ("Because Plaintiffs cannot be attorneys-in-fact, as a matter of law, the POAs Plaintiffs use here do not convey Plaintiffs standing to assert claims on any patient's behalf.") Judge Vazquez explained that state-law limitation in *Somerset Orthopedic*:

In New Jersey, a power of attorney is governed by the Revised Durable Power of Attorney Act ("RDPAA"), N.J.S.A. 46:2B-8.1, *et seq.* The Act provides that "the principal authorizes another *individual or individuals or a qualified bank* ... known as the attorney-in-fact to perform specified acts on behalf of the principal as the principal's agent." N.J.S.A. 46:2B-8.2(a) (emphasis added). Agent is defined as "the person authorized to act for another person pursuant to a power of attorney," and banking institution "includes banks, savings banks, savings and loan associations and credit unions." N.J.S.A. 46:2B-10. Based on the plain language of the statute, it does not appear that Plaintiffs can be

2. Count 8's Breach of Fiduciary Duties Claim under ERISA 502(a)(3)(B)

I also find the allegation in proposed Count 8 to be futile because Gotham fails to plausibly allege facts establishing that Defendants were fiduciaries.

To assert a claim for breach of fiduciary duty under ERISA, a plaintiff must establish that: "(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan." *Chaaban v. Criscito*, 468 F. App'x 156, 161-62 (3d Cir. 2012) (citing *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007)). For purposes of the first element, ERISA defines a plan fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002 (21)(A). A fiduciary under ERISA "must be someone acting in the capacity of manager, administrator, or financial adviser to a 'plan.' " *Pegram v. Herdrich*, 530 U.S. 211, 222, (2000) (citing 29 U.S.C. §§ 1002(21)(A)(i)-(iii) ). Fiduciaries are defined "in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251, (1993). "[T]he linchpin of fiduciary status under ERISA," however, "is discretion." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994).

The issue of discretion turns on whether a party "maintained any authority or control over the management of the plan's assets, management of the plan in general, or maintained any responsibility over the administration of

---

attorneys-in-fact because they are neither individuals nor banking institutions.

2020 WL 1983693 at *7.

the plan." *Id.* On the other hand, "persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be fiduciaries because they do not have discretionary roles." *Confer v. Custom Engineering Co.*, 952 F.2d 34, 39 (3d Cir. 1991).

Here, Gotham parrots the statutory definition of fiduciary and alleges in conclusory fashion that Defendants acted as fiduciaries because they "exercised discretion in determining the amounts of Plan benefits that would be paid to Plan beneficiaries." (1AC ¶456.) Without factual content, such bald assertions do not establish that Defendants were in fact fiduciaries under ERISA. *See Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, No. 13-03057, 2013 WL 5780815, at *8 (D.N.J. Oct. 25, 2013) (dismissing plaintiff's complaint because while it was "draped with conclusory assertions that [defendant] acted as a fiduciary and exercised discretionary authority, it lack[ed] specific facts to support the plausible inference that [defendant] was, in fact, a fiduciary." (internal citations omitted).

Because the proposed First Amended Complaint fails to allege facts tending to establish that Defendants were fiduciaries, Count VIII is inadequately pled. I therefore decline to address Defendants' additional futility arguments with respect to this claim; they can be addressed in relation to any amended pleading.

3. Count 9's Claim for Failure to Provide Plan Documents under 29 U.S.C. § 1132(a)(1)(A) and 1132(c)(1)

Proposed Count 9, asserting a claim for failure to provide plan documents, is also rejected as futile.

To state a claim for failure to provide plan documents under Section 502(c)(1)(B), a plaintiff must allege:

> (1) that he is a plan participant or beneficiary; (2) that he has made a written request to a plan administrator for information that falls within the purview of ERISA's disclosure requirements; and (3) that the plan administrator failed to provide the requested documents within thirty days of the written request.

*In re Wargotz v. NetJets, Inc.*, No. 09-4789, 2010 WL 1931247, at *3 (D.N.J. May 13, 2010) (citing 29 U.S.C. § 1132(c)(1)(B)).

Here, the proposed first Amended Complaint alleges that certain insureds executed an assignment of benefits in favor of Gotham. (1AC ¶343.) And, as previously explained, while healthcare providers are neither participants nor beneficiaries in their own right, they may obtain derivative standing by assignment from a plan participant or beneficiary. *CardioNet,* , 751 F.3d at 176 n.10 (3d Cir. 2014). Defendants submit that two of the insureds in this matter had plans that contained an anti-assignment provision. However, for the other insureds, the proposed First Amended Complaint adequately alleges that Gotham is a plan beneficiary for those insureds that executed valid assignments of benefits. Therefore, the first element is satisfied.[6]

However, the proposed First Amended Complaint fails as to the second element because Gotham failed to allege that it made a *written* request for documents. (*See* 1AC ¶474.) Courts in this district have dismissed without

---

[6]    As for the insureds whose plans contained an anti-assignment provision, Gotham contends that Defendants waived enforcement of this provision by interacting with Gotham during the claims procedure. (Reply at 14-15.) Specifically, Gotham submits that Aetna would interact with Gotham regarding the status of claims and remitted reimbursement for claims directly to Gotham. (*Id.* at 15 (citing 1AC ¶¶350, 387, 437.).) However, it is now settled within this district that an insurer does not waive an anti-assignment clause by dealing directly with a provider in the claim review process or by directly remitting payment to a provider. *Arash Emami, MD, PC v. Quinteles IMS*, No. 17-3069 , 2017 WL 4220329, at *3 (D.N.J. Sept. 21, 2017) ("[I]t is now well-settled law in the District of New Jersey that the Plan did not waive the Anti–Assignmnent Clause by dealing directly with the Medical Provider in the claim review process, or by directly remitting payment to the Medical Provider.*"); IGEA Brain & Spine, P.A. v. Blue Cross & Blue Shield of Minnesota*, No. 16-5844, 2017 WL 1968387, at *3 (D.N.J. May 12, 2017) ("Simply engaging in a claim review process with Plaintiff does not demonstrate a 'clear and decisive act' to waive the Plan's anti-assignment provisions and confer upon Plaintiff standing to sue.") *Advanced Orthopedics & Sports Med.*, 2015 WL 4430488, at *6–8 (D.N.J. July 20, 2015) (holding the same).

prejudice claims under ERISA 502(c)(1)(B) where the plaintiff failed to allege that the request for plan documents was in writing. *See Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, No. 16-01649, 2017 WL 751851, at *5 (D.N.J. Feb. 27, 2017) ("Although Plaintiff alleges that it 'requested plan materials on behalf of Patients A.G., C.P., [and] B.G.,' Plaintiff does not allege that it sent a *written* request. For that reason, Count Eight is insufficiently pled and dismissed without prejudice.") (internal citations omitted); *See Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13-552, 2015 WL 3938925, at *6 (D.N.J. June 25, 2015), *aff'd*, 650 F. App'x. 106 (3d Cir. 2016) (granting motion to dismiss for claim under Section 502(c)(1)(B) when plaintiff failed to allege that it sent written request for information).

Amendment would therefore be futile as to Count 9 as currently pled.

### 4. Count 10's Claim for Attorneys' Fees and Costs

ERISA 502(g)(1) provides courts with discretion to grant reasonable attorney's fees and costs to either party. 29 U.S.C.A. § 1132(g)(1) ("[T]he court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). Because the prosed First Amended Complaint fails to state an ERISA claim at this juncture, I will deny amendment as to the associated claim for attorneys' fees and costs.

In sum, I find that amendment to assert the newly-raised ERISA claims would be futile, as they are inadequately pled. This aspect of my ruling, however, covering Counts 7–10, is entered without prejudice to a further motion to amend.

### III.    ACA Claim

Finally, I address the newly-asserted claim under the Patient Protection Affordable Health Care Act ("ACA") (Count 6). The proposed First Amended Complaint alleges that Defendants failed to properly reimburse Gotham for emergency services rendered to the insurers in accordance with the ACA. (1AC ¶429.) Here, Plaintiff relies on 42 U.S.C. § 300gg-19a(b) and its accompanying regulations, which mandate coverage for emergency services. Further, Gotham

submits that it has an implied right of action to enforce the ACA against Defendants pursuant to 42 U.S.C. § 300gg-19a. (1AC ¶432.) Because I find that provision does not grant plaintiffs a private right of action, I find the proposed ACA claim is futile as a matter of law.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). To determine whether a federal law implies a private right of action, a court must assess whether the statute "displays an intent to create not just a private right but also a private remedy." *Id.* (citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). Determination of whether a statute creates an implied right of action is a matter of statutory construction. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) ("The question of the existence of a statutory cause of action is, of course, one of statutory construction."). Importantly, "'unless [the] congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 371 (3d Cir. 2005) (quoting *Thompson v. Thompson,* 484 U.S. 174, 179 (1988) (alteration in original).

As a court in this district recently found, 42 U.S.C. § 300gg-19a does not provide a private right of action. *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.,* No. 19-8783, 2021 WL 3661326, at *8 (D.N.J. Aug. 18, 2021). First, while Congress created private rights of action to enforce other sections of the ACA, there is no such "express right of action to enforce the emergency services requirement or any other requirement addressed in § 300gg-19a." *Id.* The inclusion of a private right in one section of law suggests that the omission of such a right from another section was intentional. *See Id.*; *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.),* 677 F.3d 178, 186 (3d Cir. 2012) ("[W]here the same statute contains private causes of action in other sections . . ., 'it is highly improbable that Congress

absentmindedly forgot to mention an intended private action.'" Further, other courts have similarly found that there is no implied right of action to enforce those provisions of the ACA that do not contain an express right of action. *Somerset Orthopedic*, 2021 WL 3661326 at *3; *Assoc. of N.J. Chiropractors, Inc. v. Horizon Healthcare Servs., Inc.*, No. 16-8400, 2017 WL 2560350, at *4 (D.N.J. June 13, 2017) ("In short, § 2706 [of the ACA] is devoid of any rights-creating language, and, because Congress did not prescribe a private remedy in that section, there is no basis for finding that Congress intended to create a private right of action by implication."); *Mills v. Bluecross Blueshield of Tenn., Inc.*, No. 15-552, 2017 WL 78488, at *6 (E.D. Tenn. Jan. 9, 2017) (concluding that there is no private right of action for individual plan members to enforce the ACA because Congress "expressly left enforcement of these requirements to the states and the Secretary of Health and Human Services, not individuals"). And, "there is no discussion of a remedy for patients to enforce non-compliance by an insurer in § 300gg-19a." *Somerset Orthopedic*, 2021 WL 3661326 at *8.

For those reasons, I find there is no private right of action under section 300gg-19a and, therefore, amendment to assert Count 6 is rejected as futile.

## IV.    Conclusion

For the reasons set forth above, I will deny Gotham's motion to amend (DE 13). As to Counts 1–5 and 11–15, state law claims which are preempted by federal law, my ruling is final and with prejudice, as further amendment would be futile. As to the remaining Counts, my ruling is without prejudice to a second motion to amend within 30 days.

An appropriate order follows.

Dated: September 10, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**